May I please record I'd like to reserve five minutes for rebuttal. Thank you. Yes. My name is Adam Levine. I am the attorney for Watson Newman. The issue, of course, before the court is whether the district court properly granted summary judgment against Watson Newman in his claim brought under Section 301 of the Labor Management Relations Act. At the outset of the hearing on summary judgment, the district court articulated its decision at the very beginning of the hearing, referring to what it believed to be, the phrase used was an unlawful side deal. The technical term is unlawful direct dealing. This was an issue that was never raised by either Bills, Gambling Hall, nor Local 501 in their motions for summary judgment. It was raised in the reply for the first time, which is something I brought up to the district court in oral argument. Normally, the failure to raise an issue on a motion for summary judgment waives the issue. The response to that by Bills in its brief before this court was, well, it was proper to raise it for a first time in the reply because Watson Newman never raised the issue prior to his opposition to the motion for summary judgment. But by reviewing the record, that is simply not true. First, as I set forth in my supplemental excerpts to the record, both Michael Gaughan and Louise Doran, the Director of Human Resources, were disclosed under Rule 26 as being knowledgeable regarding the management decisions regarding what Watson Newman did and the fact that he was not an at-will employee. They took the deposition of Louise Doran, the Human Resources Director at the property, who confirmed it. More significantly, that he was not an at-will employee and that management did not consider him an at-will employee. Does it matter what his compensation was? No, because Section 18 of the contract, 18.01, is the superior workman provision, and the superior workman provision specifically recognizes the right of management to raise the compensation level based upon the level of performance. Beyond the fact that this issue was raised for the first time and again, at his deposition, Watson Newman tried to explain the circumstances as to how he got the title only of Assistant Chief Engineer but was not to be considered a management employee and was covered under the Just Cause provisions. You know I ask about compensation, don't you? Was he being compensated as? As the level of compensation that he was receiving would be consistent with either an Assistant Chief or the superior workman. In other words, the amount that he got above and beyond a basic maintenance engineer would not be so great so as to clearly say it's because you're an Assistant Chief Engineer and acting in a management capacity. Let me go back one second to your, I'm sorry, did you finish your answer? Yes, I did. You're arguing, I assume at this point, that the fact that he had a side agreement was unlawful and had never been raised previously? That is one of the points I'm making but I'm also going to turn. But that's, aside from the contract, that's the law, isn't it? Well, that's why I was going to say not only is there the procedural problem but substantively on the merits the unlawful direct dealing claim would fail and if I may I will address that as well. Well, I don't want to get you off on something that's unimportant. I mean the NLRA says that you can't have a side agreement between them. Absolutely. Absolutely. But as I was indicating, forgetting the procedural problems with their failure to raise it in a proper fashion, the unlawful direct dealing argument fails on the merits because unlawful direct dealing requires that there be a demonstration that the side agreement undermines or derogation of the union as the exclusive bargaining representative. And that just didn't happen here. What happened was there was a chief engineer position which bills in 501 conceded at the summary judgment stage was intended to be a management position. Well, that management position of a chief engineer and by extension assistant chief engineer should never have been a contractual position. It violates the act to have members of management in the bargaining unit. Nothing is more basic. I think it's section 8A2 of the National Labor Relations Act. Interference or domination with the union. You can't have management in the bargaining unit to begin with. So what happened was, and this was not a decision Watson Newman made, this was a decision that the property made. That they would do away with the chief engineer's position which they did in 2000 when they fired Bill Perrin and replaced that position with a non-union director of engineering instead of chief engineer. That was a decision that was made by the property and was presumably known to local 501 because local 501 did not file a charge with the National Labor Relations Board suggesting that somehow by taking this management position out of the contract, which it should never have been in the first place, that this was an unlawful unilateral change. So that was a decision that was made by the property with the, certainly the knowledge and acquiescence of local 501. What happened was, and this is the evidence that was before the district court, which was originally the property general manager Michael Gaughan went to Watson Newman, would you like to be the new assistant chief of engineering? Initially he said yes and then at a subsequent meeting said, yeah, you know what, after looking at the contract, I don't want to be, I want to stay in a non-supervisory capacity. And that's an issue of fact because the testimony before the district court, the property bills produced the testimony of Richard Danzig, the HR vice president, who said no, Watson Newman was running the crew down there, was acting in a management capacity. We disputed that. Watson Newman disputes it with his affidavit. But it wasn't just his affidavit. Watson Newman also produced the testimony of the human resources director, Luis Durant, who said no, he wasn't. He was never acting in a management capacity and that's why the property considered him to be covered by the just cause provisions of the contract. If he's not covered by the contract, then where are you? If he, that goes to the seniority issue, which is if you determine, well, if you determine that he was, that there's no issue of the fact that he was the assistant chief engineer and was acting in a management capacity, he still has a claim under section 301 for the breach of the seniority provision. I'm sorry, I think that he couldn't be covered by the contract because he's a supervisor. Right. A management employee can't be part of the bargaining unit. That just violates the basic premise of the act. And then, so he's not, assume you're right, he's not covered by the contract. He's a management employee. Then where are you with this lawsuit? Then he still has a provision, he still has a valid claim under the seniority provision. So he's not covered by the contract? Well, no. It's not that he's not covered by the contract. Even bills acknowledged that the assistant chief engineer would be covered by section 10. Now, what you're saying is if he's a management, he shouldn't have been under it in the first place. We agree. But that was a problem that was fixed by the property in 2000 when it eliminated the chief engineer's position. If you follow what I'm saying. I don't either. Okay. Then I'm going to have to assist you. It is clear that the management of the property chose to do away with the chief engineer's position in 2000 and replace it with a non-union director of engineering. We were not privy to that decision. But the logical inference to be drawn to which Watson Newman is entitled to the benefit on summary judgment is that that was to bring them into compliance with the act. Now, the facts as established before the district court were that Watson Newman, despite having the title, only operated as a non-supervisory regular engineer. So that would bring him under the contract. So you say he is under the contract. Yes. You're not saying he was not under the contract. No. The position of assistant chief engineer would not properly be under the contract. But the testimony which was produced before the district court was that, in fact, he never operated in a management capacity. That was the testimony of the shop steward, Ernest Romero, the director of human. No, but pro forma, the position of assistant chief engineer is not covered by the contract. Well, you agree with that. I agree that it's not within the scope of the National Labor Relations Act. And it shouldn't be in there. Right. But it was. And it was then by the act of management taken out. And the important point to remember is after this was done, when the 1998 to 2003 contract expired, Watson Newman was part of the bargaining team for the 2003 to 2008 labor agreement for 501, not management. And one of the things he bargained was the site deal for himself. No. That was the issue was decided by management back in 2000. They simply left the language unchanged in the agreement. But the director of human resources and the shop steward corroborated his testimony that he had the title but not the responsibilities. And under the case law, I cited, including from this circuit, it is the actual job performed which determines what you are, not the title that you hold. They could give him any title that they wanted. But it is the job performed that determines whether he's in the bargaining unit. Now, if he's covered by the collective bargaining agreement, is this something that should have been, you know, grieved? Did he take it to a grievance? He did take it to the grievance. He did grieve it. And did it go to arbitration? No, because the union breached its duty of fair representation. And did you sue on that? Yes, we did. And did you win or lose? The court never addressed the issue because it found it unlawful. Unlawful direct dealing never expressly addressed the issue, at least in oral argument. We did present evidence, however, which would be sufficient for a prior effect to determine that there was a breach of the duty of fair representation. When the matter was set for arbitration, one day before the arbitration, Watson Newman is called in by the business manager and told, we've settled the grievance without your consent. It's $2,500. Take it or leave it. I'd like to reserve my remaining. Well, but how did that end? What happened was is that the union resolved the grievance to the prejudice of Watson Newman, which was a breach of the duty of fair representation. And, of course, then he brought this action under Section 301, alleging that the contract was breached and the union breached its duty of fair representation in settling the grievance secretly, you know, apparently approximately one week before the arbitration was set and without informing him until the day before. Okay, I got you. Thank you. Thank you. Good morning, and may it please the Court. Anthony Golden on behalf of Corner Investment Company doing business as Bill's Gambling Hall. I'd like to address one of the recent points that was brought up, which is, did the district court address the issue of fair representation? It did, in fact. In its order, granting summary judgment, it found that the union did not breach its duty of fair representation, either on Mr. Newman's discharge or on the seniority rights issue. Let me ask you one question that concerned me. The issue of whether the label under the collective bargaining agreement controls or the actual duties he performed controls, was that matter litigated, or do you agree with the rule that your opposing counsel announced or stated? Well, in general, I agree with the rule. However, the evidence in Mr. Newman's deposition, Mr. Newman did not deny that he held the position of assistant chief engineer. In fact, he said it a number of times throughout his deposition that he was in that position. While he was being questioned by both lawyers, the union's lawyer and the employer's lawyer, even though he said he was not performing the duties, he was never able to clearly define what those duties were. There was no job description at that time as to what the assistant chief engineer did. All that the collective bargaining agreement states is that it assists the chief engineer. Mr. Newman specifically did say in his deposition that when he was promoted to assistant chief engineer, he was given a few extra duties, one of which was to order supplies, another of which was to transmit messages from the chief engineer to the crew. Wait a minute. I thought chief engineer was abolished. Well, before Bill's Gambling Hall became Bill's Gambling Hall, when it was Barbary Coast, Richard Iwanek held the position of chief engineer. At that time, that was also when Mr. Newman was promoted to assistant chief engineer. Once it became Bill's, the classification was not abolished. I certainly disagree with that point. The classification was not abolished. Richard Iwanek simply was moved into a different position called the manager of engineering. That means the chief engineer position was vacant. Correct. And that left only the assistant chief engineer, which was the plaintiff. Correct. And he contends that he simply performed the duties of the rank and file engineer. He does now, Your Honor. He contends that. But during his deposition, he did state that he had some additional duties that he performed when he became assistant chief engineer, things like ordering supplies. Was that issue before the district court? Yes, I believe it was. Did he get summary judgment on that issue? Yes, Your Honor. What did he say in his decision on that issue? Well, the district court found that there was not enough evidence that Mr. Newman presented to say that he was not performing the duties of an assistant chief engineer. Well, was that an issue of fact that was disputed? Well, I believe counsel does believe that's an issue of fact that was disputed. Unfortunately, there's not anything in the record specifically that says he wasn't performing those duties until he submits his affidavit in opposition to summary judgment. If you look at Louise Duran's testimony, she was the HR director at the time prior to bills taking over. When she had her deposition taken, she testified that she didn't observe Watson Newman on a daily basis. She didn't really know what he did. She was not familiar with the collective bargaining agreement. In fact, in her deposition, she testified that she only handled grievance issues for other unions, not the operating engineers. She had no idea what the operating engineers' agreement said. And she also testified that she thought everybody was covered by the just cause provision in the collective bargaining agreement and by the grievance and arbitration provisions. Well, unfortunately, I don't have with me the district court's decision. But you say the district court did consider this issue on summary judgment and found that, I guess, if this was a material issue, did he find there was no dispute of fact on this question? I'm sorry, Your Honor. I missed the last part. Did the district court find there was no dispute of material fact with regarding to this question? I believe, Your Honor, that the district court did find there was no dispute as to a material fact, primarily because that fact is largely immaterial in this case. Mr. Newman does not dispute that he held the position of assistant chief engineer. And under the collective bargaining agreement, that classification is specifically excluded. No, no. But doesn't he say he held that position in name only? And in fact, his duties really didn't change from when the time he was, I'll call it a line engineer. He did say that in his affidavit in opposition to summary judgment. But that was not the case during his deposition. Well, you don't you don't think it's a. Well, let me ask this question. And I don't know collective bargaining law, but suppose the contract classifies a position a certain way or says a certain position is not covered. Right. Within the contract. Yes. But the employee says, yes, I have that title. But I'm really a covered employee because I do what the contract calls an engineer. Now, is that just a question of fact? The. Depending on what is the fact point, the arbitrator is supposed to decide or the court or the board. Well, Your Honor, I think the issue. Well, in general, that is an issue of fact, whether or not he was performing those duties. OK, let's talk. And I think Judge Reinhart's question is. So in this case, apparently that issue of fact was raised. And the district court say in its order that, well, it's not a contrary issue of fact that there's not enough evidence on one side or the other or something like that. Correct. I believe it was that there wasn't enough evidence to go to a jury on that issue because Mr. Newman did not assert sufficient evidence to create a genuine issue on that matter. So on that matter, meaning although he was classified as assistant chief engineer, in fact, he was a line engineer. That's correct, because that that specifically contradicts his prior testimony during his deposition, which says what his testimony during his deposition. First of all, said, yes, I held the position. Yes. The classification of assistant chief engineer. It also says I had some additional duties as assistant chief engineer. He said that his deposition. Yes. And the district court relied on that. And it must have. I believe so. It must have concluded that. Well, he is an assistant chief engineer, something like that. Yes. On the summary judgment motion. Correct. The other issue is whether there was this actual side deal. And I think on that point, we've got, first of all, such a side deal would be precluded by the National Labor Relations Act in any event. It's also precluded by Article 24 of the collective bargaining agreement, which prohibits the. Well, and on that deal, I have this this part of the district court's opinion says there is no evidence from which a reasonable juror could find any side agreement. Right. And then says even had such an agreement been reached, it would be void. Correct. So it was pretty clear on the side agreement. Correct. And if we turn to the seniority rights issue, unless there are other questions about the side agreement or the duties, if we turn to the seniority rights issue, the issue there is Mr. Newman is arguing he in the event that he was not protected by just cause and not protected by the grievance and arbitration procedures, then he would still be entitled to seniority rights under the Article 10 of the collective bargaining agreement. The problem with that argument is it creates an endless loop type situation, because if he's not covered by just cause bills can terminate him at any time for any reason or no reason. And then, according to Mr. Newman, would be required to rehire him based on seniority. Only five minutes later, he could be terminated again for any reason. So the. That's not quite what it says. The Article 10 says that he has preference for retaining and regaining employment in case of curtailment or expansion. Provided he has the ability to perform the work involved satisfactorily. Correct. So he has preference for being rehired, but only if you determine that he has the ability to perform the work satisfactorily. So that doesn't create any problem. No, not the language in and of itself. I agree with that. And in this situation, Richard Danczak testified that Newman was selected to be terminated based on poor performance issues. Then he shouldn't be arguing that he's not covered by Article 10 or the Article 10 creates the problem. You just explained why Article 10 doesn't create a problem. Well, you're right. I agree. It doesn't create a problem. It only creates a problem under under my colleague's theory of if he's not covered by just cause, meaning if he is an at will employee, then he's still covered by Article 10 seniority rights. I think that creates a problem. Because he wasn't. You didn't exclude Article 10. Right. But your answer is that he didn't qualify because you didn't consider that he had the ability to perform the work satisfactorily. Correct. And that eliminates the issue entirely. Unless the court has further questions, I'll submit on that. Okay. Thank you. Good morning, Your Honors. Margo Feinberg, Schwartz, Steinsperr, Dorman and Summers for the Operating Engineers, Local 501. First of all, just in case it wasn't clear, Local 501 was in bankruptcy for a period of time. We were stayed and therefore did not file a brief. And then we were never ordered to file a brief, but we are still party to this case. And I'm glad I've gotten an opportunity to speak to you because I feel like something got lost in this story, which is that this is a hybrid 301 action. The first thing the plaintiff has to show is that the union breached its duty of fair representation, which it did not. The plaintiff contends that this, well, first of all, the court did find that we were not arbitrary, discriminatory, or retaliated against the plaintiff, which we did not. The plaintiff was an assistant chief engineer. He was one. As you asked, he was paid as one. He had the benefits of one. He contends that he had a private agreement with the employer to continue to maintain other benefits of the contract which assistant engineers don't have. In other words, that he was supposed to still have due just cause provision apply to him and the grievance and arbitration provision apply to him, which the union did not know about and which actually would be unlawful as cited in the employer's brief. The contract says, No employee covered by this agreement shall be compelled or permitted to enter into any individual contract or agreement with an employer concerning the conditions of the employment set forth therein. You said this is a hybrid action. Now, what is the gist of the complaint against the union as to the unfair representation? Where do you understand the gist of it? What did you do wrong? I don't think we did anything wrong, Your Honor, but he's admitted that we didn't discriminate against him. He admits that we didn't retaliate against him. And so, as you know, he was an active union person. So I think his contention is that we didn't properly investigate and argue the side agreement and that the side agreement would have assisted him in making his contention that he had rights under the collective bargaining agreement. But the union representative in evaluating the case, who actually filed the grievance and tried to make an argument for him with the employer, ultimately concluded that there could be no side agreement. First of all, we didn't know of a side agreement, but there could be no side agreement that he was an assistant chief engineer. And so there was no point to go to arbitration because we couldn't go to arbitration. We didn't have those rights. The union still did get him a little sum of money. The union did believe that we had to fill the position of assistant chief engineer and did get an agreement on that. Then the second issue came up where he contended that once they said they were going to fill the position, that he had a right to the position because he had experience in the position, which I have to say is a little bit ironic since he said he wasn't in the position. Is he in the position? Anyhow, that being said, the union concluded, again, looking at the facts, that he didn't qualify the position. And so while they filed the grievance, they made a good-faith determination not to pursue it to arbitration. And so to prevail in this case, he would have to show that we were either arbitrary, discriminatory, or retaliatory, and we were none of the above. We made a reasoned decision based on the facts, based on the contract. I think that our ---- Well, let me just ask you two questions. Because you didn't file a brief, I understand, because you're in bankruptcy. Okay. Anything, Your Honor. Two questions. One, he went to the union executive board, which agreed with the decision not to file. That's correct. Most constitutions have a clause that requires you to go to the international after you lose in the executive board. I gather yours doesn't? I have to say I'm not versed in the constitution of AO501, but of the international in that particular regard. But I can say that those facts never came up. He never appealed it. And that would be on him to appeal if there was an appeal right. You don't know if there is an appeal right. Right. But to my knowledge, there was no assertion that he tried to appeal, and that was denied. We gave him ---- Okay. Next question. Oh, sorry, sorry. Next question. As you said, it's a hybrid case. If he prevails against the union, I mean, if he fails to prevail against the union, can he then still pursue his claim against the employer? I do not believe he can under the law. Okay. And if I could have one more second just to address this direct dealing. Direct dealing is really sort of a red herring. I don't think it matters one way or another. The real issue is that the collective bargaining agreement provides that you can't have a side agreement, and the union made a good faith determination that he couldn't pursue the grievance based on that. So ---- Thank you. Thank you. Okay. Thank you. Counsel, let me just ask you the question I asked your opponent. If you don't prevail against the union, can you still pursue the case against the employer? Under one theory, yes, on the seniority, because if you take the position he's covered by the assistant chief engineer's position under the contract, even bills in 501 concede that the seniority provision does apply to the assistant chief engineer position. But because the assistant chief engineer position is not subject to the grievance and arbitration provision, he would have a right to pursue direct judicial relief. That's Baca v. Sipes where the Supreme Court said one example of when an employee can pursue judicial relief is if there is no grievance and arbitration provision. So under the seniority claim, yes, he could. There's a couple points I'd like to address. And then your claim would be that he ---- the employer could not determine that he was not qualified to perform the work? That would be an issue of fact for the jury because Nevada has an actual statute, 613.210, which allows the employee to get a truthful statement as to the reason for the discharge. The truthful statement that was given by bills was that it was a staff reduction for labor expense savings and that he was eligible for rehire. All right. That's your answer to the question. Yeah, that's an issue of fact for the jury. It's not amenable to disposition on summary judgment. A couple facts I'd like to clarify. Contrary to the representations of Bill's counsel, the chief engineer's position was eliminated back in 2000, long before Harris took over. The position was held by a man named Richard Perrin, who was eliminated. And it was when Perrin was eliminated that the property brought in a nonunion outside of the contract, director of engineering, and that was Richard Iwaniak. And that testimony was established by the director of human resources, Louisa Duran. The district court did not make a finding that Watson Newman was carrying out, that there was no genuine issue of material fact, that Watson Newman was acting in a supervisory capacity. The definition of supervisor, of course, is defined under Section 211 of the National Labor Relations Act. Ordering supplies does not make one a supervisor. You have to be. That's why I asked you about the compensation. You think it doesn't matter, I gather. It doesn't matter in this particular case because the amount of additional compensation of a couple dollars would fall within the scope of the superior workman. And that would be an issue for the trier of fact to determine. Was he paid extra money because he was a superior workman as opposed to? We're looking at a case that was dismissed. Summary judgment, isn't that right? That is correct. And when we looked there, we looked to see what are the facts? Whether there is a genuine issue of material fact that you go through. I agree, but you're also. Don't we? Yes, you do. But you also look at those facts in a light most favorable to the party, to the nonmoving party. Yes. And so when we look, the facts most favorable to the nonmoving party, we see that he was called the assistant operating engineer. He was compensated as assistant operating engineer. He says he didn't have seniority in that position at one point. And then he says he does have seniority position at another point. And that's the only genuine issue of fact on this record so far as you're concerned. Or is there another one? I'm over my time, but let me answer the question. No, because it was not established through uncontroverted testimony in the district court below that the reason he got additional compensation was because he was the chief engineer as opposed to the superior workman clause of the contract. That issue was never developed factually, and it was their burden to establish that the money that he got was because he was acting in a management capacity as opposed to the superior workman. That issue was just never developed with the evidence presented. It was never developed in what we look at as facts and a reasonable inference from those facts. Isn't that right? That is correct. In those reasonable inferences. His title was assistant operating engineer, and he was compensated as assistant operating engineer. Isn't that what the record says? He was compensated. No. He was compensated at an amount greater than a regular maintenance engineer, but that is still consistent with Section 18, the superior workman clause of the contract. And the reason that he got the additional money, was it superior workman as opposed to assistant chief, is an issue for the trier of fact because, as you pointed out. It might be, unless there's a record saying that he was discharged because he didn't perform the job. But that, as I addressed to I believe Judge Reinhardt, that's an issue of fact. I believe I'm over my time as much as I'd like to keep making points. Or if we take you over your time, then you're really not over your time. I appreciate that. We decide. If you have any other questions you would like answered with my additional time. I have no other questions. Okay. Thank you. Thank you. The case is argued and will be submitted.
judges: Farris, Reinhardt, Tashima